## NEASMAN v USAA CASUALTY INSURANCE COMPANY

Case No. 87-183-CC (H)

County Court, Marion County

October 11, 1988

### APPEARANCES OF COUNSEL

**Bruce R. Kaster,** for plaintiff.

**Carl Carrillo,** for defendant.

### OPINION OF THE COURT

HALE R. STANCIL, County Judge.

### *FINAL JUDGMENT*

THIS CAUSE came on to be heard the 21st day of September, 1988.

Plaintiff, ELIZABETH NEASMAN, a teacher with the Marion County school system was permanently injured, sustaining a ruptured disk in an automobile accident occurring October 1, 1986. Plaintiff has received treatment from four doctors and has been advised to undergo surgery for the repair of her injury and take off work. To date however, the plaintiff has neither undergone the surgery recommended nor applied for any lost wages even though she had at one time taken off from work.

Plaintiff at the time of injury had a policy with defendant USAA

Casualty Insurance Company which provided for certain benefits including PIP coverage of $10,000 and medical payment benefits of $5,000. Plaintiff made claim for certain medical payments under the policy for which defendant has paid. Defendant has not refused payment of any of plaintiff's claims.

Plaintiff through her attorney and by letter to defendant directed defendant to pay plaintiff's medical bills from under the medical payment section of the policy prior to the exhaustion of the PIP payments section and save the PIP coverage for wage loss.

Defendant position is that the plaintiff's medical should be paid first under the PIP section of the policy up to 80% with the remaining 20% being paid out of the medical pay section of the policy. In other words, PIP coverage is primary and must be exhausted before medical payment benefits become available.

The essential issue to be resolved is: When a party purchases insurance coverage providing for both PIP coverage and medical payments must PIP coverage be exhausted prior to paying claims under the medical payments section of the policy when the insured has both a medical claim and a claim for lost wages or may claimant apportion their claims to secure the maximum available benefits?

Both plaintiff and defendant have provided the court with authority for their respective positions. Plaintiff relies primarily upon *Holloway v State Farm Mutual Insurance Company,* 370 So.2d 452 (4th DCA 1979), whereas defendant relies primarily upon *Blume v American Motorist Insurance Company,* 407 So.2d 1046 (3d DCA 1981).

In *Holloway* a claim against the insurance company was made for loss of income under the PIP coverage and specifically requested that the insurance company either pay no medical at all or pay medical expenses out of the medical payments coverage. In the case at hand there is no claim for loss of income, although the plaintiff no doubt could make a claim. In any event, in *Holloway* the insurance company, as in the case at hand, ignored Holloway's instructions and applied all of the remaining PIP benefits to the payment of medical bills and denied any further claim for lost income. As a result, *Holloway* sued claiming they had the right to utilized the PIP coverage for lost income prior to the payment of any medical bills. Although the meaning of "primary" is not defined in section 627.736(4), Florida Statutes (1975) under the terms of the *Holloway* policy the parties themselves agreed that PIP coverage is primary and must be exhausted before the excess medical payments benefits would be available. In spite of the plain language of the contract, the court nonetheless held that the insured

42

"had the right to apportion their claim so as to secure the maximum benefits available."

In *Blume* the court held that PIP benefits must be exhausted prior to payments from medical payment coverage concluding that PIP coverage is primary and must be exhausted before medical payment benefits become available. The *Blume* court saw no conflict between its decision and *Holloway* insofar as requiring PIP to be exhausted prior to the use of medical payment coverage. Here, as in *Holloway,* the insured plaintiff had two coverages available, PIP and medical payments. Realizing further that surgery was recommended and required to correct the ruptured disk and that she would undoubtedly be out of work recovering from operation plaintiff sought to take maximum advantage of the coverages she had purchased by limiting the medical payments claim under PIP coverage to lost income. In this fashion, if the entire $10,000 PIP coverage went to a claim for lost income, plaintiff would still have $5,000 of coverage available for medical bills under the medical pay section of her policy. On the other hand, if the PIP coverage was used up first in the payment of medical bills, there would be no coverage available for lost income even though monies might still be available under the medical pay section of her policy to pay claims that were not paid out of the PIP section.

No evidence was presented to this court concerning the costs of the surgery recommended, recovery time after surgery or the estimated amount of lost wages and the court cannot speculate on these matters of concern.

Common sense does dictate that when one talks of surgery for a ruptured disk and "spinal fusion," they are not talking of minor surgery or a quick recovery.

If we consider a quite plausible scenario in which an insured has $12,500 in medical bills with $10,000 PIP coverage and $5,000 in medical pay coverage it doesn't take long to realize that the insured will have all $12,500 in medical bills paid but will be left with -0- for lost wages.[1] Also noteworthy is the fact that the insured has $2,500 in benefits remaining with the insurer that are restricted solely to the payment of medical bills. Even though the insured is out of work and has sustained wage loss no lost wage benefits will be paid even though premiums have been paid for this protection. The insurer is able to keep the remaining $2,500 unclaimed medical payment benefits the insured has bought and paid while the insured has suffered a loss for which he cannot be compensated. This court does not believe that this

---

[1] Under the PIP section 80% of the $12,500 or $10,000 in medical bills will be paid leaving 20% or $2,500 to be paid from the medical pay section of the policy.

result was the intent of the legislature in enacting section 627.736 Florida Statutes.[2]

Why would or why should an insured purchase med-pay? Why not just purchase additional PIP coverage? Certainly an insured purchases the medical payments coverage to help defray the cost of medical expenses incurred. An additional premium is paid for this coverage.

Having considered the evidence, the law and the argument of counsel for the respective parties, it is

ORDERED AND ADJUDGED that when an insured has both PIP and medical payment benefits available and suffers injuries which will necessitate medical treatment including surgery and loss of work and wages do to recovery the insured has the right to apportion his claim so as to secure the maximum benefits. It is further

ORDERED AND ADJUDGED that jurisdiction for the determination of taxable costs and attorneys' fees is retained.

DONE AND ORDERED in Chambers at Ocala, Marion County, Florida this 11th day of October, 1988.

---

[2] The court will leave to others to decide what should happen if an insured with PIP coverage of $10,000 and medical pay benefits of $5,000 suffers medical expenses of $15,000 and lost wages of $10,000. Should the claims be paid on the basis of who files first or apportioned on the basis of when incurred or on the day(s) the wages were lost?